SOLAMED O2, LLC,

               Plaintiff,

     v.

AIRGAS USA, LLC,

               Defendant.

Case No. 19-cv-5762 (JMA)

## ANSWER AND AMENDED COUNTERCLAIM
## OF DEFENDANT AIRGAS USA, LLC

Defendant Airgas USA, LLC ("Airgas" or "Defendant"), by and through its counsel, Blank Rome LLP, hereby responds to the February 24, 2020 First Amended Complaint (the "Complaint") of plaintiff SolaMed O2, LLC ("SolaMed" or "Plaintiff"), as follows:

1.    To the extent Plaintiff's introduction requires a response, Airgas denies the allegations in paragraph 1 of the Complaint.

2.    Airgas admits only that it contracted with SolaMed for the delivery of industrial, specialty, and/or medical gas products as set forth in a Product Sale Agreement between the parties, dated on or about September 23, 2009 (the "PSA"), or as set forth in purchase orders after the PSA was terminated, and Airgas otherwise denies the remaining allegations in paragraph 2 of the Complaint. Further, the allegations of paragraph 2 of the Complaint state legal conclusions for which no response is required, and as such, are deemed denied. By way of further answer, the PSA and purchase orders are documents that speaks for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

3.    Airgas denies the allegations in paragraph 3 of the Complaint.

4.     The allegations of paragraph 4 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer to the extent a response is required, Airgas admits only that it is a Delaware entity with its principal place of business in Pennsylvania, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 of the Complaint.

5.     The allegations of paragraph 5 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer to the extent a response is required, Airgas denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.     Airgas denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7.     Airgas admits only that it is a distributor of medical gases.

8.     The allegations of paragraph 8 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

9.     The allegations of paragraph 9 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

10.     The allegations of paragraph 10 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

11.     The allegations of paragraph 11 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

12.     Airgas denies the allegations in paragraph 12 of the Complaint.  Further, the allegations of paragraph 12 state legal conclusions for which no response is required and as such, are deemed denied.

13.     Airgas denies the allegations in paragraph 13 of the Complaint.  Further, the allegations of paragraph 13 state legal conclusions for which no response is required and as such, are deemed denied.

14.     Airgas denies the allegations in paragraph 14 of the Complaint.  Further, the allegations of paragraph 14 state legal conclusions for which no response is required and as such, are deemed denied.

15.     Airgas denies the allegations in paragraph 15 of the Complaint.  Further, the allegations of paragraph 15 state legal conclusions for which no response is required and as such, are deemed denied.

16.     Airgas denies the allegations in paragraph 16 of the Complaint.  Further, the allegations of paragraph 16 state legal conclusions for which no response is required and as such, are deemed denied.

17.     Airgas denies the allegations in paragraph 17 of the Complaint.  Further, the document referenced in paragraph 17 of the Complaint speaks for itself, and any allegations inconsistent with its terms are denied.

18.     Airgas denies the allegations in paragraph 18 of the Complaint.

19.     Airgas denies the allegations in paragraph 19 of the Complaint.

20.     Airgas denies the allegations in paragraph 20 of the Complaint.

21.     Airgas denies the allegations in paragraph 21 of the Complaint.  Further, the allegations of paragraph 21 state legal conclusions for which no response is required and as such, are deemed denied.

22.     Airgas denies the allegations in paragraph 22 of the Complaint.

23.     Airgas denies the allegations in paragraph 23 of the Complaint.  Further, the allegations of paragraph 23 state legal conclusions for which no response is required and as such, are deemed denied.

**COUNT I**
**Breach of Contract**
**(Unilateral Rate Increase)**

24.     Airgas incorporates its responses to all prior paragraphs of the Complaint as if fully set forth herein.

25.     The allegations of paragraph 25 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

26.     Airgas denies the allegations in paragraph 26 of the Complaint.  Further, the allegations of paragraph 26 state legal conclusions for which no response is required and as such, are deemed denied.

27.     Airgas denies the allegations in paragraph 27 of the Complaint.  Further, the allegations of paragraph 27 state legal conclusions for which no response is required and as such, are deemed denied.

28.     Airgas denies the allegations in paragraph 28 of the Complaint.  Further, the allegations of paragraph 28 state legal conclusions for which no response is required and as such, are deemed denied.

## COUNT II
### Breach of Contract
### (Soliciting Plaintiff's Clients)

29.     Airgas incorporates its responses to all prior paragraphs of the Complaint as if fully set forth herein.

30.     The allegations of paragraph 30 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

31.     Airgas denies the allegations in paragraph 31 of the Complaint.  Further, the allegations of paragraph 31 state legal conclusions for which no response is required and as such, are deemed denied.

32.     Airgas denies the allegations in paragraph 32 of the Complaint.  Further, the allegations of paragraph 32 state legal conclusions for which no response is required and as such, are deemed denied.

33.     Airgas denies the allegations in paragraph 33 of the Complaint.  Further, the allegations of paragraph 33 state legal conclusions for which no response is required and as such, are deemed denied.

## COUNT III
### Breach of Contract
### (Delivery Suspended)

34.     Airgas incorporates its responses to all prior paragraphs of the Complaint as if fully set forth herein.

35.     The allegations of paragraph 35 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

36.     Airgas denies the allegations in paragraph 36 of the Complaint.  Further, the allegations of paragraph 36 state legal conclusions for which no response is required and as such, are deemed denied.

37.     Airgas denies the allegations in paragraph 37 of the Complaint.  Further, the allegations of paragraph 37 state legal conclusions for which no response is required and as such, are deemed denied.

38.     Airgas denies the allegations in paragraph 38 of the Complaint.  Further, the allegations of paragraph 38 state legal conclusions for which no response is required and as such, are deemed denied.

**COUNT IV**
**Tortious Interference with Contract**

39.     Airgas incorporates its responses to all prior paragraphs of the Complaint as if fully set forth herein.

40.     Airgas denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint.

41.     The allegations of paragraph 41 state legal conclusions for which no response is required, and as such, are deemed denied.  By way of further answer, the PSA and subsequent purchase orders are documents that speak for themselves and any allegations inconsistent with the terms of the PSA and subsequent purchase orders are denied.

42.     Airgas denies the allegations in paragraph 42 of the Complaint.

43.     Airgas denies the allegations in paragraph 43 of the Complaint. Further, the allegations of paragraph 43 state legal conclusions for which no response is required and as such, are deemed denied.

44.     Airgas denies the allegations in paragraph 44 of the Complaint. Further, the allegations of paragraph 44 state legal conclusions for which no response is required and as such, are deemed denied. The prayer for relief and jury demand following paragraph 44 of the Complaint contain no factual allegations requiring a response; to the extent a response is required, Airgas denies all allegations contained in the prayer for relief and denies that SolaMed is entitled to the relief requested therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

45.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

46.     Plaintiff's claims are barred for failure to plead adequate facts to support its claims against Airgas.

### THIRD AFFIRMATIVE DEFENSE

47.     Plaintiff's claims are barred by the doctrines of waiver and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

48.     Plaintiff's claims are barred by SolaMed's inequitable and/or wrongful conduct, and unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

49.     Plaintiff's claims are barred because any damages allegedly suffered by Plaintiff were the result of SolaMed's own actions and/or omissions.

## SIXTH AFFIRMATIVE DEFENSE

50.     Plaintiff's claims are barred because any damages allegedly suffered by Plaintiff were the result of actions or inaction by third parties, and not by Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

51.     Plaintiff's claims are barred by SolaMed's prior material breach of contract.

## EIGHTH AFFIRMATIVE DEFENSE

52.     Plaintiff's claims are barred in whole or in part for failure to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

53.     Plaintiff's claims, and any recovery sought thereunder, are barred by set-off of amounts SolaMed owes to Airgas.

## TENTH AFFIRMATIVE DEFENSE

54.     Plaintiff's claims are barred because Airgas has not breached the PSA or any other contract or agreement with SolaMed.

## ELEVENTH AFFIRMATIVE DEFENSE

55.     Plaintiff's claims are barred by the terms of the agreements between the parties.

## TWELFTH AFFIRMATIVE DEFENSE

56.     Plaintiff's claims are barred because any alleged conduct by Airgas that purportedly violated the PSA was justified.

## THIRTEENTH AFFIRMATIVE DEFENSE

57.     Plaintiff's claims are barred because they are vexatious, brought in bad faith, and/or brought solely for the purpose of harassment.  Airgas is therefore entitled to attorneys' fees as a result of this action.

## FOURTEENTH AFFIRMATIVE DEFENSE

58. Airgas reserves the right to amend and/or supplement this Answer to assert any additional defenses based upon the discovery of additional facts ascertained through continuing and ongoing investigation and discovery in this action.

## AMENDED COUNTERCLAIM OF AIRGAS USA, LLC

Defendant/counterclaim-plaintiff Airgas USA, LLC ("Airgas"), by and through its counsel, Blank Rome LLP, as for its Amended Counterclaim against plaintiff/counterclaim-defendant SolaMed O2, LLC ("SolaMed"), alleges as follows:

### Introduction

1. Airgas seeks damages arising from its extension of credit to and SolaMed's failure to pay for purchases of gas products actually supplied by Airgas under a Product Sale Agreement, and, following termination of that agreement, through additional spot purchases made by SolaMed on a purchase order by purchase order basis.

2. Airgas extended net 30 day payment terms to SolaMed under its Product Sale Agreement and individual purchase orders. SolaMed repeatedly and egregiously breached these payment terms, depriving Airgas of hundreds of thousands of dollars through unpaid and short paid invoices, and additional loss of use damages resulting from SolaMed's refusal to return gas cylinders to Airgas as required by the terms of sale, for combined damages in excess of $1 million.

### Factual Allegations

#### A. The Product Sale Agreement

3. On or about September 23, 2009, Airgas and SolaMed entered into a Product Sale Agreement (the "PSA") pursuant to which SolaMed agreed to purchase from Airgas its requirements of certain industrial, specialty, and/or medical gases ("gas products").

4.     The initial term of the PSA was for two years, commencing on the date of the first delivery of product by Airgas under the agreement.  (PSA ¶ 2.)

5.     Following the initial term, the PSA "thereafter shall automatically renew for successive two (2) year terms unless terminated upon not less than thirty (30) days written notice by either party prior to either: (a) at the end of the initial term; or (b) the end of any renewal term, as the case may be."  (PSA ¶ 2.)

6.     The terms of payment under the PSA were "Net 30 Days."  (PSA ¶ 3.)  Further, "[i]n the event [SolaMed] fails to make any payment when and as due, [Airgas] may charge [SolaMed] six percent (6%) interest per annum calculated from and excluding the due date thereof to and including the date of payment."  (*Id.*)

7.     Paragraph 4 of the PSA requires SolaMed to pay rental and facility fees for the cylinders in which gas was delivered, which demurrage or rental was charged at "[Airgas'] standard published rate."  (PSA ¶ 4.)

8.     Paragraph 5 of the PSA further requires SolaMed to return in good condition all cylinders in which gas was delivered, complete with caps and fittings, and requires SolaMed to "pay [Airgas] the replacement value of any lost or damaged cylinders, caps or fittings."  (PSA ¶ 5.)

**B.  Airgas' Undisputed Invoices to SolaMed for Gas Product**

9.     Throughout the term of the PSA, Airgas supplied all product as requested by SolaMed.

10.    Throughout the term of the PSA, SolaMed's customers received from Airgas all of the product as requested by SolaMed.

11.    Throughout the term of the PSA, Airgas regularly invoiced SolaMed for these purchases and accompanying rental and facility fees.

12.     In the regular course of business between the parties under the PSA, Airgas sent to SolaMed via email: (i) Standard Invoices for gas product purchased; (ii) Cylinder Rental Invoices; and (iii) Equipment Rental Invoices.

13.     Each Standard Invoice specified, among other information, the quantity and type of each gas product purchased, the order number, order date, unit price, total amount due, and payment due date for gas product purchased by SolaMed under the PSA.

14.     Standard Invoices generally also included a Delivery Order confirming the order type, order number, ship to location, product description and quantity, and payment terms, among other information.

15.     Airgas provided Standard Invoices to SolaMed on the same date gas product was ordered or within one week thereafter.

16.     Each Cylinder Rental Invoice specified the size and type of each cylinder held by SolaMed or its customers, the gas product, the rental rate, total amount due, and payment due date for cylinder rental.

17.     Each Equipment Rental Invoice specified the type of equipment rented, the rental dates, quantity, unit price, total amount due, and payment due date for equipment rental.

18.     Airgas provided SolaMed with Cylinder Rental Invoices and Equipment Rental Invoices on the last day of each month in which rental fees were incurred.

19.     SolaMed received each of these invoices in the regular course of business between the parties under the PSA.

20.     SolaMed did not object to these invoices, nor to specific charges or line items included in the invoices.

### C. SolaMed's Breach of the PSA Payment Terms

21.    SolaMed did not pay for these purchases in full within the 30 day period set forth in the PSA, and instead maintained an increasing balance due to Airgas.

22.    SolaMed made partial payments on selected invoices.

23.    SolaMed failed to make full payment on thousands of outstanding invoices.

24.    In early 2019, Airgas began discussions with SolaMed concerning SolaMed's large unpaid account balance.

25.    At that time, Airgas reminded SolaMed of the net 30 day payment terms applicable under the PSA.

26.    SolaMed continued to leave invoices unpaid for periods in excess of the 30 day payment terms, with some invoices past due by over 100 days.

27.    On April 22, 2019, Airgas provided written notice to SolaMed of SolaMed's breach of the PSA.

28.    Specifically, Airgas notified SolaMed on April 22, 2019, that the amount due and owing to Airgas for purchases under the PSA was $461,202.16, with $346,314.51 in arrears on over 1,700 separate invoices. The April 22 notice further advised SolaMed that many of the unpaid invoices were over 100 days past due at that point, and again instructed SolaMed that the PSA requires payment to Airgas on net 30 day terms.

29.    Though not required under the PSA, the April 22 notice provided SolaMed with 10 days to cure its default by making its account current before Airgas would terminate the PSA for SolaMed's material breach.

30.    Following the April 22 notice, SolaMed sought a new pricing structure for future orders.

31.    However, SolaMed failed to cure its default under the PSA.

32.     On May 14, 2019, Airgas provided written notice to SolaMed terminating the PSA as a result of SolaMed's material breach for failure to comply with the PSA's payment terms.

33.     At the time the PSA was terminated, SolaMed owed in excess of $287,000 to Airgas under the PSA, exclusive of interest.

### D.   SolaMed's Continued Failure to Pay for Product After PSA Termination

34.     Following Airgas' termination of the PSA on May 14, 2019, Airgas continued to offer gas products to SolaMed for spot purchases with delivery and payment terms set on an individual purchase order-by-purchase order basis.

35.     Beginning on or about May 22, 2019, SolaMed resumed purchasing gas products from Airgas through individual purchase orders at the spot purchase prices set forth in each purchase order.

36.     Airgas supplied all of SolaMed's designated customers with product under these spot purchase orders.

37.     And SolaMed's designated customers received all requested product under these spot purchase orders.

38.     Like the PSA, the individual purchase orders also provided SolaMed with net 30 day payment terms.

39.     Airgas continued to accept and fulfill spot orders from SolaMed at market rates and to invoice SolaMed for these purchases.

40.     As with purchases under the PSA, Airgas invoiced SolaMed in the ordinary course for each spot purchase under the individual purchase orders, as well as for the accompanying rental and facility charges under these individual purchase orders.

41.     As with purchases under the PSA, Airgas provided Standard Invoices to SolaMed via email for its spot purchases on the same date the gas product was ordered or within one week thereafter.

42.     Airgas provided SolaMed with monthly Cylinder Rental Invoices and Equipment Rental Invoices via email at the end of each month in which rental fees were incurred.

43.     As with the invoices under the PSA, SolaMed did not object to these invoices, nor to specific charges or line items included in the invoices.

44.     Upon information and belief, in addition to making spot purchases from Airgas, SolaMed also sourced gas products from other suppliers following the termination of the PSA.

45.     While purchasing and accepting product from Airgas under individual purchase orders, SolaMed continued to disregard its existing and increasing outstanding balance owed to Airgas.

46.     SolaMed underpaid some invoices, and left others unpaid entirely.

47.     On September 9, 2019, Airgas sent SolaMed another written demand for payment. At that time, SolaMed's outstanding account balance was over $455,000, with over $343,440 of that total past due.

48.     Airgas demanded $250,000 from SolaMed by September 17, 2019 in order to maintain SolaMed's net 30 day open credit terms under the purchase orders. Airgas also notified SolaMed at that time that if SolaMed did not make the $250,000 payment against its $455,132.04 AR by September 17, 2019, all SolaMed's future purchase orders would need to be paid in full (cash on delivery) in advance, with an additional payment of $1,000 per invoice until SolaMed's outstanding balance was reduced to $0.

49.     Following Airgas' September 9, 2019 demand, SolaMed paid approximately $244,618 toward its outstanding balance.

14

50.     However, SolaMed continued to short pay invoices, attempting to unilaterally and belatedly set its own price terms for gas products purchased from Airgas.

51.     As a result of SolaMed's continued non-payments and underpayments, in early October 2019 Airgas implemented the revised payment terms of cash on delivery plus $1,000 for each new order in an effort to decrease SolaMed's account receivable balance.

52.     Despite these efforts, as of July 16, 2021, SolaMed owed Airgas $556,829.65 on open and short paid invoices. A chart summarizing SolaMed's unpaid and short paid invoices and the amounts due thereunder as of July 16, 2021 is attached hereto as **Exhibit A**.[1]

53.     Airgas has continued to invoice SolaMed for cylinder and equipment rental as it is incurred. SolaMed has continued to leave these invoices unpaid in whole or in part, increasing its open AR balance to more than $556,000 as of the date of this pleading.

54.     Thus, in excess of $556,829.65 remains due and owing to Airgas for gas products supplied to SolaMed under the spot purchase orders and months-old PSA orders, plus interest.

**E.  Loss of Use Due to SolaMed's Failure to Return Cylinders**

55.     Like the PSA, the purchase orders for SolaMed's spot purchases of gas products required SolaMed to return the product cylinders to Airgas in good condition, complete with caps and fittings.

56.     After a partial cylinder reconciliation in early September 2019, Airgas was aware of more than 3,300 cylinders delivered to SolaMed that were unaccounted for, at a total value of over $300,000.

[1] The invoices referenced in Exhibit A total several thousand pages and have been summarized into chart form for pleading purposes only. Each invoice identified therein is hereby incorporated into this pleading by reference. SolaMed has a copy of each such invoice in its possession, having received each from Airgas.

57.     Following a complete cylinder reconciliation performed by Airgas, on October 31, 2019, Airgas sent SolaMed an invoice for $481,949.94 for the loss of use resulting from failure to properly return over 4,000 cylinders.

58.     To date, SolaMed has failed to return over 3,700 gas cylinders as required under both the PSA and individual purchase orders, and has failed to pay Airgas' invoice in full.

59.     This resulted in a loss of use to Airgas in excess of $337,000, exclusive of interest.

**COUNT I**
**(Breach of Contract – Net 30 Day Payment Terms)**

60.     Airgas repeats and realleges all prior paragraphs as if fully set forth herein.

61.     The PSA was a valid and binding agreement between Airgas and SolaMed.

62.     Prior to terminating the PSA on May 14, 2019, Airgas performed all of its obligations under the PSA by supplying the purchased gas products.

63.     After termination of the PSA, each purchase order made by SolaMed for spot purchases of gas products was a valid and binding agreement between Airgas and SolaMed.

64.     Airgas performed all of its obligations under each individual purchase order by supplying the purchased gas products.

65.     As set forth above, SolaMed failed to pay Airgas in full for the gas products it purchased from Airgas, including rental and facilities fees, within 30 days, in violation of the terms of the PSA and each individual purchase order.

66.     SolaMed's failure to pay the outstanding balance due under the PSA and the purchase orders has directly and proximately damaged Airgas. The total amount owed by SolaMed to Airgas for gas products supplied to SolaMed by Airgas under the PSA and the purchase order invoices for spot purchases is $556,829.65, plus interest as agreed at 6%.

## COUNT II
### (Breach of Contract – Loss of Use)

67.     Airgas repeats and realleges all prior paragraphs as if fully set forth herein.

68.     The PSA and each purchase order for SolaMed's spot purchases were valid and binding agreements between Airgas and SolaMed.

69.     Airgas performed all of its obligations under the PSA and under each purchase order by supplying the purchased gas products.

70.     As set forth above, SolaMed failed to return all cylinders to Airgas in good condition following delivery of gas products from Airgas as required under paragraph 5 of the PSA.

71.     As set forth above, SolaMed failed to return all cylinders to Airgas in good condition as required under each purchase order for SolaMed's spot purchases of gas products following termination of the PSA.

72.     SolaMed's failure to return the cylinders or pay the outstanding loss of use charges has directly and proximately damaged Airgas. The total amount owed by SolaMed for loss of use of Airgas' cylinders is $337,928.35, plus interest as agreed at 6%.

## COUNT III
### (Account Stated)

73.     Airgas repeats and realleges all prior paragraphs as if fully set forth herein.

74.     As set forth above, Airgas offered to and did supply gas products to SolaMed under the PSA and subsequently under individual purchase orders.

75.     Airgas provided SolaMed with invoices following each order under the PSA and following each spot purchase order. Airgas' invoices to SolaMed specified amounts due for each product ordered, as well as for cylinder rental and related costs as set forth in the PSA and purchase orders.

76. The invoices were payable on net 30 day terms.

77. Exhibit A hereto, summarizing SolaMed's invoices under the PSA and spot purchase orders, sets forth the unpaid balances on each invoice, and the total unpaid and short paid balances due and owing to Airgas as of July 16, 2021.

78. SolaMed accepted the invoices as correct in that it never objected to the invoices that comprise the current A/R balance of more than $556,829.65, nor did SolaMed object to the individual line items in the invoices.

79. Notwithstanding SolaMed's lack of objection, SolaMed made only partial payments on selected invoices.

80. Notwithstanding SolaMed's lack of objection, SolaMed failed and refused to make any payments on the remaining outstanding invoices.

81. Accordingly, Airgas has an account stated in the amount of at least $556,829.65, plus interest as provided for under the PSA and spot purchase orders.

**WHEREFORE**, Airgas respectfully requests that the Court dismiss SolaMed's Complaint in its entirety with prejudice, and enter judgment in favor of Airgas as follows:

a. On the First Counterclaim, direct and consequential damages arising from SolaMed's breach of the net 30 day payment terms of the PSA and purchase orders in the amount of $556,829.65 plus interest as agreed at 6%, as well as pre- and post-judgment interest, for a total amount to be determined at trial but not less than $590,000.

b. On the Second Counterclaim, direct and consequential damages arising from SolaMed's breach of the obligation to return cylinders to Airgas and the resulting loss of use to Airgas in the amount of $337,928.35, plus interest as agreed at 6%, for a total amount to be determined at trial but not less than $370,000.

c. On the Third Counterclaim, direct and consequential damages arising from an account stated in the amount of $556,829.65, plus interest as agreed at 6%, as well as pre- and post-judgment interest, for a total amount to be determined at trial but not less than $590,000.

d. Such other and further relief as this Court deems just and proper, including attorneys' fees and costs.

Dated: New York, New York
      August 23, 2021

**BLANK ROME LLP**

By: */s/ Rachel L. Cohn*
    Rachel L. Cohn
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
RCohn@blankrome.com

Larry R. Wood (*pro hac vice forthcoming*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500
LWood@blankrome.com

*Attorneys for Defendant Airgas USA, LLC*